IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
CHARLES ALFORD, III          )
                             )
        Plaintiff,           )
                             )
v.                           )      1:08cv595 (LMB/TRJ)
                             )
MARTIN & GASS, INC., et al., )
                             )
        Defendants.          )
```

<u>MEMORANDUM OPINION</u>

Before the Court is plaintiff Charles Alford, III's Petition for Award of Attorneys' Fees and Costs, seeking $106,780.15 in fees and $3,260.93 in costs. For the reasons stated below, the petition will be granted in part and denied in part, and plaintiff will be awarded $69,967.60 in attorney's fees and $1,190.93 in costs.

## I. Background.

Plaintiff Charles Alford, III ("Alford") sued his former employer, Martin & Gass, Inc. ("Martin & Gass"), and its president, Samuel Gass, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII") and the Fair Labor Standards Act, 29 U.S.C. § 201 <u>et seq.</u> ("FLSA"). At the conclusion of discovery, the Court granted summary judgment to the defendants on the discrimination claims,[1]

---

[1] Angler Construction Company ("Angler"), which owned and operated the site where Alford worked, was also named as a defendant in the Title VII counts, and was alleged to have negligently retained an employee who had engaged in racially

leaving only the FLSA overtime claim for trial.  <u>See</u> <u>Alford v.</u>
<u>Martin & Gass</u>, No. 1:08cv595 (LMB/TRJ), 2009 WL 497581 (E.D. Va.
Feb. 25, 2009).

Before trial, the parties stipulated that the defendants
had, as Alford alleged, misclassified him as an "exempt" employee
under the FLSA and, as such, had failed to pay him time-and-a-
half for overtime.  The parties also agreed on Alford's hourly
pay that would be used to calculate how much overtime he was
owed.  The only issues left for the jury trial were (1) whether
the defendants' misclassification of Alford was willful, and (2)
how many hours of overtime Alford had worked.  The jury found
that the misclassification was not willful, and that Alford had
worked 288 hours of overtime during the relevant time period,[2]
resulting in an award of $23,587.20, consisting of $11,793.60 for
unpaid overtime and $11,793.60 in liquidated damages pursuant to
29 U.S.C. § 216(b).  Alford filed a Bill of Costs, to which the
defendants objected.  The defendants' objections were granted in
part, and the Bill of Costs was reduced to $1,422.90.  Alford has

---

insensitive conduct toward Alford.  The negligent retention
count, like the Title VII claims, was resolved in Angler's favor
at summary judgment.  The term "discrimination claims" will be
used to refer to the Title VII and negligent retention counts
collectively.

[2]Because the jury found that the failure to pay overtime was
not willful, Alford was limited to recovering overtime pay for
the two years preceding the filing of his Complaint.  <u>See</u> 29
U.S.C. § 255(a).

now moved for an award of $106,780.15 in attorneys' fees and $3,260.93 in costs.

## II. Standard of Review.

A prevailing party in a FLSA lawsuit is entitled to an award of reasonable attorney's fees and costs, <u>see</u> 29 U.S.C. § 216(b), and such an award is mandatory, <u>see Burnley v. Short</u>, 730 F.2d 136, 141 (4th Cir. 1984). The party petitioning for fees and costs bears the burden of establishing the reasonableness of the fees and costs it is seeking. <u>See Plyler v. Evatt</u>, 902 F.2d 273, 277 (4th Cir. 1990). In arriving at a reasonable attorney's fee, the Court first determines a lodestar figure by multiplying the number of reasonable hours expended times a reasonable hourly rate. <u>See Robinson v. Equifax Info. Servs.</u>, 560 F.3d 235, 243 (4th Cir. 2009). In determining the lodestar, the Court considers the twelve factors enumerated in <u>Barber v. Kimbrell's, Inc.</u>, 577 F.2d 216 (4th Cir. 1978):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

-3-

<u>Kimbrell's</u>, 577 F.2d at 226 n. 28.  The Court then deducts any
fees resulting from time spent on unsuccessful claims, and
ultimately "awards some percentage of the remaining amount,
depending on the degree of success enjoyed by the plaintiff."
<u>Robinson</u>, 560 F.3d at 244 (internal quotation marks and citations
omitted).

### III. Discussion.

Alford was represented by The Employment Law Group, P.C.
("TELG"), which tasked six individuals to work on this lawsuit,
including partners Nick Woodfield and Scott Oswald, who have 12
and 19 years of experience, respectively; one associate, Subha
Bollini, with 1 to 2 years experience; two legal assistants,
Franklin Wagner and Shannon Baker-Branstetter;[3] and a private
investigator, Phil Becnel.  TELG billed these individuals at the
following hourly rates: $410 per hour for Woodfield and Oswald,
$225 per hour for Bollini, and $130 per hour for Wagner, Baker-
Branstetter, and Becnel.

Based on TELG's calculations of the number of hours each
individual worked on the FLSA claims, it seeks $106,780.15 in
fees.  The defendants have argued that both the number of hours
billed and the hourly rates are unreasonable, and that the fee

---

[3]Only one legal assistant worked on the case at a time; Mr.
Wagner passed away in October 2008 and Ms. Baker-Branstetter
assumed his duties thereafter.

award should be substantially reduced.[4]  In support, defendants
have provided an affidavit of an attorney, Allen Farber, who
reviewed the fee petition as well as the relevant case materials
and opined that many specific billing entries, as well as the
overall fee petition, were unreasonable and excessive.  TELG also
seeks $3,260.93 in costs, to which the defendants have objected
as well.

### A. Reasonable Number of Hours.

The first Kimbrell's factor is "the time and labor
expended."  According to the time records TELG has submitted, its
attorneys and support personnel spent a total of 380.21 hours on
Alford's successful FLSA claims, divided as follows: Woodfield,
131.35 hours; Oswald, 65.85 hours; Bollini, 22.5 hours; Wagner,
29.06 hours; Baker-Branstetter, 90.15 hours; and Becnel, 41.3
hours.

Defendants correctly object that several specific charges
are unreasonable and therefore must be excluded:

(1) 0.4 hours billed by Woodfield, and 5.6 hours billed by
Oswald, to prepare expert testimony by Dr. Richard Edelman.

---

[4]Alternatively, the defendants also argue that the Court
should deny the fee petition in its entirety, citing Fair Housing
Council of Greater Washington v. Landow, 999 F.2d 92, 97 (4th
Cir. 1993) for the principle that a fee petition can be denied if
it "shocks the conscience."  This argument is unpersuasive.
Landow was not a FLSA case, and the Fourth Circuit has explicitly
held that a fee award in FLSA cases is mandatory.  Burnley, 730
F.2d at 141.  In addition, the fee petition submitted by
plaintiff, although excessive, does not shock the conscience.

Edelman's only work on the FLSA claims was a calculation of the value of Alford's lost overtime pay, based on Alford's claim that he had worked 5.75 hours of overtime per week during 142.7 weeks at a rate of $40.95 per hour. This simple mathematical calculation did not require an expert.[5]

(2) 2.9 hours billed by Baker-Branstetter, and 2.5 hours billed by Woodfield, for matters related to the appeal of Alford's discrimination claims. Where a plaintiff only succeeds on certain claims, and those claims rest on "distinctly different facts and legal theories" from the unsuccessful claims, the plaintiff is only entitled to fees and costs for the successful claims. Landow, 999 F.2d at 97. Accordingly, any fees that relate exclusively to the discrimination claims cannot be charged to the defendants.

(3) 9 hours billed by Woodfield to review and edit time records associated with the fee petition. As the defendants argue, such extensive time should not have been necessary and should not be charged to the defendants.

(4) All fees for the private investigator, Becnel. "Given

---

[5]Plaintiff's counsel also consulted Edelman for a calculation of the value of any damages from Alford's discrimination claims. These calculations, which involved estimating Alford's future earning capacity, life expectancy, and capacity for income growth, constituted the vast majority of Edelman's expert report, which was submitted to the Court before trial as an exhibit to a motion in limine. The Court excluded Edelman from testifying at trial because his testimony concerning the FLSA claims was unnecessary.

-6-

the broad discovery tools available in civil litigation, the
need for an investigator is highly questionable," <u>Jackson v.
Estelle Place, LLC</u>, No. 1:08cv984, 2009 WL 1321506, at *3 n.
1 (E.D. Va. May 8, 2009).  Plaintiff has not provided an
adequate explanation for why an investigator was used;
accordingly, none of Becnel's fees will be awarded.

(5) All time spent before Alford retained TELG on May 28,
2008.[6]  A private client would not be charged for such
expenses; accordingly, such time should not be charged to
the defendants.  <u>Id.</u> at *4.  This results in reductions of
4.7 hours for Oswald, 0.9 hours for Woodfield, 10.4 hours
for Bollini, and 0.05 hours for Wagner.

The deductions discussed above reduce the number of remaining
hours claimed to: Woodfield, 118.55, Oswald, 55.55, Bollini,
12.1, Wagner, 29.01, and Baker-Branstetter, 87.25.[7]

---

[6]Although the time entries do not make it clear exactly when
Alford retained TELG, defendants have argued that this occurred
no earlier than May 28, 2008, because a time entry for the
previous day, May 27, indicates that TELG requested that Alford
sign an engagement letter during a conference that would take
place the following day.  Alford did not dispute this in his
reply; accordingly, the Court will use May 28, 2008 as the day on
which Alford retained TELG.

[7]Defendants argue that certain other hours should be
excluded entirely, including time for a settlement conference
with a magistrate judge and on motions <u>in limine</u>.  These tasks
were reasonable and the hours will not be excluded.  Defendants
have also argued for the exclusion of significant amounts of time
spent by the two legal assistants on administrative work that,
according to the defendants, should be "included in the overheard
which is part of any lawyer's hourly rate," and not billed

-7-

As to the remaining <u>Kimbrell's</u> factors to be considered in
determining a reasonable number of hours, the Court accepts
plaintiff's counsel's contentions that TELG accepted and
litigated Alford's case at the expense of other matters it turned
away, and that cases such as Alford's can be "undesirab[le] . . .
within the legal community." In addition, plaintiff was the
prevailing party, and his recovery was significantly more than
the defendants' initial settlement offer and exceeded their final
settlement offers.[8] Moreover, on February 13, 2009, about two
weeks before trial, Alford made an offer – which defendants
rejected – to settle the FLSA claims for $25,000 and a petition
for fees and costs. This demand turned out to be very close to
the amount that Alford actually recovered. Accordingly, had the
defendants accepted the February 13 offer, both sides would have
avoided trial expenses. This factor weighs heavily in
plaintiff's favor. See <u>City of Riverside v. Rivera</u>, 477 U.S.
561, 580 n. 11 (noting that a defendant "cannot litigate
tenaciously and then be heard to complain about the time

---

separately. Because defendants have cited no case law for this
proposition, these hours will not be excluded. See <u>Missouri v.
Jenkins</u>, 491 U.S. 274, 285 (1989) ("A 'reasonable attorney's fee'
provided for by statute should compensate the work of paralegals,
as well as that of attorneys.").

[8]Defendants initially offered $3,071.25 to settle the FLSA
claims in September 2008. On February 13, 2009, they made two
offers: one for $10,000 plus costs and a fee petition, and one
for $20,000 plus costs and a fee petition, conditioned on
Alford's dropping the appeal of his discrimination claims.

-8-

necessarily spent by the plaintiff in response"). Indeed, approximately 61 percent of plaintiff's counsel's fees on the FLSA claims were incurred after the February 13 offer.

The "novelty and difficulty of the questions raised" and "the skill required to properly perform the legal services rendered" are neutral factors in this case. The FLSA overtime claims were neither novel nor complex; however, they did require some specialized knowledge or skill, namely, familiarity with employment law and the FLSA. In addition, although the defendants ultimately stipulated both that Alford had been misclassified and that his overtime hourly rate was $40.95, those stipulations came after discovery was completed, with the hourly rate stipulation coming shortly before trial. Moreover, the number of overtime hours Alford had worked was sharply contested, with Alford claiming that he had worked over 773 overtime hours and the defendants conceding that he had worked at most 77. This difference prevented settlement and necessitated a trial, and in finding that Alford had worked 288 hours of overtime, the jury necessarily agreed with Alford that Martin & Gass' time records did not accurately reflect that he had worked a significant number of overtime hours.

The Court has considered whether the lodestar should be reduced to account for "excessive, redundant, or unnecessary" hours, Jackson, 2009 WL 1321506, at *4, citing Hensley v.

-9-

Eckerhart, 461 U.S. 424, 433-34 (1983), that grew because
plaintiff's counsel chose to staff the case with two senior
partners, one associate, and a paralegal.[9]  Defendants support
their argument that the number of hours billed by plaintiff's
counsel is excessive with an affidavit by their counsel, Joseph
Pierce, who avers that he litigated the case essentially by
himself, with some supervision by a partner.  He further states
that from the day after the discrimination claims were dismissed,
he only billed 98.1 hours on the FLSA case.  For that same time
period, plaintiff's counsel billed 238.9 hours.  Pierce also
avers that Martin & Gass' counsel billed only 392.3 hours for the
entire case, with the vast majority allocated to the
discrimination claims, whereas plaintiff's counsel billed 905
hours for the entire case, 403.4 of which were billed by either
Woodfield or Oswald.  The Court finds that the attorneys for the
two sides performed equally competently both at the summary
judgment stage and at trial.  However, the significant disparity
in the hours spent and hourly rates charged does not tell the
whole story.  Because the plaintiff has the burden of proof, it

---

[9]For example, the billing records for February 23, 24, and
27, and March 6 reflect meetings involving Woodfield, Oswald, and
a paralegal, for which all three billed their time.  Counsel also
billed time for four individuals - Woodfield, Oswald, Wagner, and
Bollini - who attended a "case transition meeting" on May 28,
2008.  In addition, Woodfield and Oswald each billed
approximately five hours to prepare opening and closing
arguments, with Oswald billing his time for assisting Woodfield.

is not unreasonable for a plaintiff's counsel to spend more hours on a case than defense counsel.  Also, it is not known from this record whether defense counsel had a long-term relationship representing the corporate defendant.

Finally, the defendants argue that certain entries in TELG's time records are inappropriately allocated as 50% to the successful FLSA claims, and 50% to the unsuccessful discrimination claims.[10]  A fee petitioner "must make every effort to submit time records which specifically allocate the time spent on each claim."  Landow, 999 F.2d at 97.  However, contemporaneously dividing one's time by cause of action is difficult, and plaintiff's counsel has demonstrated "a good faith effort to exclude fees attributable to unsuccessful claims," id., by excluding 524.79 hours that were spent on the discrimination counts.  Moreover, although the discrimination claims constituted the bulk of the plaintiff's case until they were dismissed at summary judgment, it was the FLSA claim that went to trial, and several of the witnesses who were deposed primarily for the

_____

[10]Plaintiff's counsel submitted time records for the entire case, including the discrimination claims.  Each time entry was listed with a percentage reflecting the degree to which, according to plaintiff's counsel, the work performed related to the successful FLSA claims.  With a few exceptions, each time entry received one of the following three percentages: (1) 100% FLSA, for which plaintiff has requested payment in full, (2) 0% FLSA, in which case plaintiff has not requested any payment, or (3) 50% FLSA, for which plaintiff has requested payment for half of the time.

discrimination issues were called as witnesses at the FLSA trial.
Accordingly, the lodestar will be not be reduced further, and
will be calculated based on 118.55 hours for Woodfield, 55.55
hours for Oswald, 12.1 hours for Bollini, 29.01 hours for Wagner,
and 87.25 hours for Baker-Branstetter.

### B. Reasonable Hourly Rate.

The hourly rates sought by plaintiff are unreasonable and
will be adjusted consistent with the Court's recent evaluation of
a fee petition by TELG in another FLSA action.  See Jackson, 2009
WL 1321506, at *2-3.  Jackson involved similar overtime claims
under the FLSA and the same principal attorneys.  As in Jackson,
plaintiff has submitted affidavits by two attorneys, Patricia
Smith and Elaine Charlson Bredehoft, in support of the
reasonableness of its counsel's hourly rates.  For the reasons
set forth in greater detail in Jackson, plaintiff has not
provided sufficient evidence of the reasonability of counsel's
claimed hourly rates.  Plaintiff's affidavits rely extensively on
the Laffey matrix, which the Fourth Circuit has held is not
sufficient evidence of the prevailing rates in Northern Virginia.
See Jackson, 2009 WL 1321506, at *2 (citing Grissom v. The Mills
Corp., 549 F.3d 313, 323 (4th Cir. 2008)).  Moreover, Pierce, who
has 14 years experience, charged only $245 per hour, the senior
defense partner who supervised him charged $305 per hour, and
counsel for Angler (the co-defendant in the discrimination

-12-

claims) charged $200 per hour for one attorney and $200 for another. For these reasons, and those stated in <u>Jackson</u>, the hourly rates for Woodfield and Oswald are reduced to $350, the rate for Bollini is reduced to $170, and the rates for Wagner and Baker-Branstetter are reduced to $60. Applying these revised hourly rates to the number of hours reasonably expended, a total of $69,967.60 in attorney's fees will be awarded, based on the following calculations:

| Individual | Hours | Hourly Rate | Total Fee |
|---|---|---|---|
| Woodfield | 118.55 | $350/hour | $41,492.50 |
| Oswald | 55.55 | $350/hour | $19,442.50 |
| Bollini | 12.1 | $170/hour | $2,057.00 |
| Wagner | 29.01 | $60/hour | $1,740.60 |
| Baker-Branstetter | 87.25 | $60/hour | $5,235.00 |
| | | Total: | $69,967.60[11] |

The "amount in controversy" does not warrant further reducing the lodestar. Statutory attorney's fees should bear a reasonable relationship to those that a client would pay an attorney. <u>Cf</u>. <u>Hensley</u>, 461 U.S. at 434 (noting that "[h]ours that are not properly billed to one's <u>client</u> . . . are not properly billed to one's <u>adversary</u> pursuant to statutory authority"); <u>DiFilippo v. Morizio</u>, 759 F.2d 231, 235 (2d. Cir. 1985) (holding that the "reasonableness of the time expended must

---

[11]Because, in its calculation of the lodestar, the Court has already accounted for unsuccessful claims and the degree of success enjoyed by the plaintiff, <u>Robinson</u>, 560 F.3d at 244, it is unnecessary to do so again.

-13-

. . . be judged by standards of the private bar"). However, in a FLSA case, "undue emphasis" should not be placed on the amount of the plaintiff's recovery because "an award of attorney fees [in FLSA matters] encourage[s] the vindication of congressionally identified policies and rights." Fegley v. Higgins, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (internal citations and quotation marks omitted). Here, Alford's recovery exceeded the defendants' settlement offers. Moreover, the attorney's fee that the Court has determined is approximately three times the award achieved by the plaintiff. That ratio is not unreasonable.

## C. Costs.

Defendants also dispute some of the plaintiff's costs. Plaintiff seeks reimbursement for $1,650 in costs associated with an expert, Dr. Edelman. Edelman's expert testimony was wholly unnecessary for the FLSA portion of this case. Moreover, the $420 in costs sought for "Jury Solutions LLC" for "litigation support" were unnecessary, given the straightforward and simple nature of the FLSA case. With these adjustments, the costs for which defendants are liable are reduced to $1,190.93.[12]

## IV. Conclusion.

For the above reasons, the Court finds that a total award of

---

[12]As with the attorney's fees, defendants have argued that a 50-50 allocation of certain costs to the to the discrimination and FLSA claims, respectively, was unreasonable. For the reasons stated supra, the Court finds this allocation to have been reasonable.

-14-

$71,158.53, consisting of $69,967.60 in attorney's fees and $1,190.93 in costs, is reasonable. The fees and costs will be awarded by an Order to be issued with this Memorandum Opinion.

Entered this __3ʳᵈ__ day of August, 2009.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

-15-